UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,                    Case No. _____

        Petitioner,

    v.

LANDSCAPE SPECIALISTS, INC.,

        Respondent.

-------------------------------------------------------------- x

## PETITION TO COMPEL ARBITRATION

Petitioner National Union Fire Insurance Company of Pittsburgh, Pa. ("NUFIC"),
respectfully petitions this Court for an Order compelling arbitration against Respondent
Landscape Specialists, Inc. ("Landscape") pursuant to Sections 4 and 6 of the Federal Arbitration
Act (the "FAA"), 9 U.S.C. §§ 4, 6.

## NATURE OF THIS ACTION

1.      Through this Petition, NUFIC seeks an Order compelling Landscape to arbitrate a
dispute pursuant to the terms of a broad arbitration agreement between the parties. The underlying
dispute arises under workers' compensation policies NUFIC issued to Landscape, and related
agreements.

2.      Landscape, a construction and landscaping company with hundreds of employees,
contracted for workers' compensation coverage with NUFIC pursuant to various policies issued
between February 1, 2012 and February 1, 2016 (the "Policies").

3.      Pursuant to the Policies, and related agreements, Landscape is responsible for
reimbursing NUFIC for the first $250,000 paid on each claim (the "Retained Amount").

Landscape has refused to make reimbursement payments for years, and currently owes NUFIC

over $2 million for paid losses within the Retained Amount.  Landscape is also contractually

obligated to post additional collateral to secure its obligations to NUFIC, but refuses to do so,

leaving NUFIC substantially under-secured on a delinquent account.

        4.      Although Landscape is responsible for paying the Retained Amount on each

claim, NUFIC is obligated to pay claims in full and to later seek reimbursement of the Retained

Amount from Landscape.  NUFIC thus bills Landscape for paid losses ("Loss Invoices") on a

monthly basis, and Landscape is obligated to pay the Loss Invoices within thirty days.

        5.      Following many months of Landscape's refusal to pay Loss Invoices, NUFIC

performed a collateral review valued as of September 2016 and determined that it required

additional collateral of $1.4 million to secure Landscape's estimated obligations.  The collateral

review was driven by negative loss experience, *i.e.*, there were more losses than anticipated at

inception, and Landscape was in default on twelve months of Loss Invoices totaling nearly

$1,000,000.  Landscape refused to pay the Loss Invoices or to post additional collateral.

        6.      Following Landscape's refusal to abide by its contractual obligations, and

pursuant to the terms of the arbitration agreement in the Payment Agreement (discussed below),

on or about May 5, 2017, NUFIC served Landscape with a demand for arbitration (the

"Arbitration Demand") seeking an award of money damages for, among other things, the amount

of losses NUFIC paid within Landscape's retention, and an order requiring Landscape to post

adequate collateral.  A true and accurate copy of the Arbitration Demand (without exhibits) is

attached hereto as Exhibit A.

        7.      Upon receiving the Arbitration Demand, Landscape asked to stay arbitration

proceedings pending negotiations between the parties to resolve the dispute.  The negotiations

were not successful and NUFIC demanded that Landscape respond to the Arbitration Demand, but it refuses to do so, thus constraining NUFIC to file this Petition.

8.      Thus, NUFIC now brings this petition to compel arbitration as a motion under the Rules of this Court for an Order pursuant to 9 U.S.C. § 4 compelling Landscape to arbitrate all disputes set forth in the parties' arbitration agreement.

## PARTIES

9.      NUFIC is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business in the State and County of New York.

10.      Landscape is a corporation duly organized and existing under the laws of the State of California.  On information and belief, Landscape's principle place of business is in the State of California.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the controversy is between citizens of different States and the amount in controversy is in excess of $75,000 excluding interest and costs.

12.      The Court may exercise personal jurisdiction over Landscape because it has transacted business within the State, pursuant to C.P.L.R. § 302(a)(1), by, among other things, purposefully entering the New York marketplace to procure the insurance policies from New York-based NUFIC, repeatedly communicating – by mail, phone, and electronically – with NUFIC in New York, making payments to NUFIC in New York, and breaching contracts made in New York that caused harm to a New York resident.

13.      Moreover, in the Payment Agreement, discussed below and attached hereto with its addendums, Schedules of Policies and Payments (page numbers added) as Exhibit B,

Landscape consented to the exclusive jurisdiction of New York (and, more particularly, the exclusive jurisdiction of courts located in New York County) with respect to any action or proceeding to compel arbitration, such as the instant petition.  Specifically, the arbitration clause in the Payment Agreement provides that:

> [A]ny action or proceeding concerning arbitrability, including motions to compel or stay arbitration, may be brought *only* in a court of competent jurisdiction in the City, County, and State of New York.

Ex. B, 16 (emphasis added).

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Moreover, Landscape has, in the Payment Agreement, irrevocably consented to venue in this District with respect to any action to compel arbitration, such as the instant petition.

## STATEMENT OF FACTS

15.     NUFIC issued workers' compensation Policies to Landscape for four policy years, beginning in February 2012 and through February 2016.  Landscape is responsible for paying a Retained Amount on each claim of $250,000, but NUFIC was (and is) responsible for paying the entirety of the claim in the first instance.  NUFIC bills Landscape monthly for paid losses – the amounts NUFIC pays to workers' compensation claimants up to the $250,000 Retained Amount. NUFIC thus acts as a creditor to Landscape, in that it advances payments up to the Retained Amounts to Landscape's injured workers, based on Landscape's promise that it will later reimburse NUFIC for those amounts.

16.     To induce NUFIC to issue the Policies and extend credit to Landscape, Landscape agreed to enter into a separate agreement with NUFIC – the Payment Agreement.  The Payment Agreement defines, among other things, Landscape's obligation to pay premiums and Loss

Invoices, Landscape's obligation to post collateral, the parties' rights and obligations in the event of Landscape's default, and the mechanism for resolving disputes (arbitration).

17.     The Payment Agreement generally defines the parties' arrangement as follows: (i) NUFIC agrees to provide Landscape with insurance coverage according to the underlying Policies, to extend Landscape credit by paying claims in the first instance and seeking reimbursement later, and to invoice Landscape for any additional payment obligations that arise (such as Loss Invoices); and (ii) Landscape agrees, among other things, to satisfy all its payment obligations to NUFIC, to pay invoices on time, and to post adequate collateral. *See* Ex. B, 3. The Payment Agreement became effective simultaneously with the first Policy and ends "*only after* [Landscape] and [NUFIC] have settled and paid all obligations" under the Payment Agreement. *Id.* (emphasis added).

18.     The key definition of the Payment Agreement is the term "*Your Payment Obligation*," which defines the insured's broad obligation to pay NUFIC premiums, advances of the Retained Amount, all amounts shown in the Policies, expenses, allocated loss adjustment expenses, taxes, and surcharges, among other things. *See id.* at 14. Landscape expressly agreed "to pay Your Payment Obligation." *See id.* at 3. Moreover, Landscape agreed to pay its Payment Obligation pursuant to the timetable set forth in the Schedule attached to each Payment Agreement, and to pay any additional payments such as Loss Invoices within thirty days of any invoice. *See id.* at 15.

19.     The Payment Agreement also requires Landscape to post collateral to secure its promise to pay NUFIC for the coverage NUFIC provides. *See id.* at 6-7. Landscape is initially required to post collateral "in the amount(s) shown in the Schedule" to the Payment Agreement. *Id.* at 6. However, the Payment Agreement expressly grants NUFIC the right to require additional

collateral to secure Landscape's Payment Obligation. *Id.* NUFIC may review its "collateral requirement at any time that [NUFIC] may deem reasonably necessary." *Id.* Significantly, the Payment Agreement expressly states that: "If as result of any review we find that we require additional collateral, You [Landscape] will provide us such additional collateral within 30 days of our written request." *Id.* (emphasis omitted).

20.     Pursuant to the Payment Agreement, Landscape is in default if it fails to pay make any required payment or satisfy any obligation "within 5 days after its due date," *id.* at 7, with the due date ordinarily being thirty days after a demand for payment is made. Upon any default, NUFIC may, among other things, accelerate any unpaid amounts of the Payment Obligation, apply the collateral to the remaining balance of the Payment Obligation, and require additional collateral. *See id.* at 15.

21.     Landscape ceased paying Loss Invoices on a regular basis as of *September 2015*. As a result, NUFIC performed a collateral review in accordance with the Payment Agreement and, on February 17, 2016, demanded additional collateral of $660,942, as well as payment of $293,587 in outstanding Loss Invoices, for a total of $954,529.

22.     Landscape refused to pay *any* of these amounts, including the Loss Invoices in arrears.

23.     On September 30, 2016 NUFIC performed another security calculation. At that time, NUFIC determined that Landscape needed to post an additional $842,587 in collateral, and pay $945,380 in unpaid Loss Invoices, plus $37,826 in premium and fees, for a total amount of $1,825,793. Landscape refused to pay that amount, or any of it.

24.     Since then, Landscape has continued to default by failing to pay every monthly Loss Invoice NUFIC has sent and refusing to post any additional collateral.

25.     As a result of Landscape's refusal to pay Loss Invoices or post additional collateral, on or about May 5, 2017, NUFIC served Landscape with the Arbitration Demand asserting claims (i) for damages equal to all unpaid Loss Invoices, unpaid expenses and premium, and interest thereon, plus attorneys' fees, costs, and expenses incurred in connection with the arbitration and NUFIC' investigation and discovery of the facts prior to commencing the arbitration; and (ii) to compel Landscape to post collateral in accordance with the terms of the Payment Agreement.  *See generally* Ex. A.

26.     The arbitration provisions in the Payment Agreement are broad and require arbitration of all disputes related to the Payment Agreement.   *See* Ex. B, 8-9, 16.  Arbitration is before a panel of three arbitrators.  *Id.* at 16.

27.     In accordance with the Payment Agreement, Landscape was required to select its party-appointed arbitrator and provide notice to NUFIC of the same within thirty (30) days of the date of service of the Arbitration Demand.

28.     Landscape requested an extension of time to respond to the Arbitration Demand, hoping that the parties could resolve their dispute without formal arbitration.  NUFIC granted Landscape's request for additional time.

29.     Since then, the parties have sought to resolve the dispute, to no avail. Consequently, NUFIC demanded that Landscape respond to the Arbitration Demand, but Landscape refuses to do so.

30.     NUFIC is thus now constrained to file this Petition to Compel Arbitration to force Landscape to honor its contractual obligation to arbitrate the parties' dispute.

## COUNT ONE

### (PETITION TO COMPEL ARBITRATION)

31.     NUFIC repeats and realleges each paragraph above as if set forth fully and verbatim herein.

32.     Landscape and NUFIC entered into a valid and binding agreement to arbitrate (the Payment Agreement).

33.     The parties currently have a dispute concerning Landscape's refusal to make payments and post collateral as required by the Payment Agreement.

34.     The dispute set forth in the Arbitration Demand falls within the scope of the parties' broad agreement to arbitrate as set forth in the Payment Agreement.

35.     NUFIC has demanded that Landscape arbitrate the parties' dispute, but Landscape has yet to comply with that demand and refuses to arbitrate.

36.     Section 4 of the FAA (9 U.S.C. § 4), provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement … The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

37.     Pursuant to Section 6 of the FAA, this application "shall be made and heard in the manner provided for the making and hearing of motions."  9 U.S.C. § 6.

38.     NUFIC is entitled to an order pursuant to 9 U.S.C. § 4 compelling Landscape to arbitrate all disputes set forth in the Arbitration Demand.

## PRAYER FOR RELIEF

WHEREFORE, NUFIC respectfully requests the following relief:

(a)     An order compelling Landscape to arbitrate the dispute set forth in the Arbitration

Demand;

(b)     The costs and disbursements of this action, including an award of reasonable

attorneys' fees; and

(c)     Such other and further relief as the Court deems just and proper.


Dated: New York, New York                      ALSTON & BIRD LLP
       May 21, 2019

                                               By: */s/ Adam J. Kaiser*
                                               Adam J. Kaiser
                                               Joanna H. Schorr
                                               Laura E. Paley
                                               90 Park Avenue
                                               New York, New York 10016
                                               Adam.Kaiser@alston.com
                                               Joanna.Schorr@alston.com
                                               Laura.Paley@alston.com
                                               (212) 210-9400
                                               (212) 210-9444 (fax)

                                               *Attorneys for Petitioner National Union*
                                               *Fire Insurance Company of Pittsburgh, Pa.*

9