**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

        Petitioner,

    v.

LANDSCAPE SPECIALISTS, INC.,

        Respondent.

---

Civil Action No. 1:19-cv-04670-DAB

Hon. Deborah A. Batts

**PETITIONER'S MEMORANDUM OF LAW**
**IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS**
**AND IN SUPPORT OF ITS CROSS-MOTION**
**TO APPOINT LANDSCAPE'S PARTY-APPOINTED ARBITRATOR**
**AND ENJOIN LANDSCAPE FROM PURSUING ITS DUPLICATIVE**
**CALIFORNIA ACTION**

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 4

      A.     The Policies and the Payment Agreement ............................................... 4

      B.     The Payment Agreement's Broad Arbitration Clause ........................... 6

      C.     Landscape's Defaults ................................................................................... 7

      D.     The Arbitration Demand .............................................................................. 7

      E.     The California Action .................................................................................. 8

ARGUMENT ........................................................................................................................... 8

I.      PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF
      FAILED TO COMPLY WITH CPLR §7503(C) AND THUS HAS WAIVED
      THE RIGHT TO CONTEST ARBITRATION .......................................................... 8

      A.     CPLR § 7503(c)'s Strict Statute of Limitation Precludes Landscape From
            Objecting To Arbitration............................................................................. 8

      B.     The CPLR § 7503(c) Statute of Limitation Applies in Federal Court .................. 10

      C.     Landscape is Precluded From Contesting Arbitration on the Grounds Set
             Forth In Its Motion ...................................................................................... 11

      D.     New York Law and California Law Do Not Conflict........................................ 12

II.     THE PAYMENT AGREEMENT REQUIRES ARBITRATION OF THE
      PARTIES' DISPUTE.......................................................................................... 13

III.    SECTIONS 11658.5(A)(1) AND 11658.5(C) DO NOT PREVENT THIS COURT
      FROM COMPELLING ARBITRATION .............................................................. 15

      A.     The 2012 Policy Pre-Dates Section 11658.5(a)(1), and, Therefore, Is Not
             Subject to Its Provisions............................................................................. 16

      B.     The 2014 and 2015 Policies Comply with Section 11658.5(a)(1) Allowing
             this Court to Compel Arbitration .............................................................. 16

      C.     A Violation of Section 11658.5(a)(1) Does Not Void an Arbitration
             Clause............................................................................................................ 17

      D.     Section 11658.5(c) Does Not Require Dismissal of the Petition......................... 17

IV.    THIS COURT SHOULD ENJOIN LANDSCAPE FROM FURTHER
      PROSECUTING ITS DUPLICATIVE CALIFORNIA ACTION AND APPOINT
      LANDSCAPE'S PARTY-APPOINTED ARBITRATOR .............................................. 23

CONCLUSION....................................................................................................................... 23

## PRELIMINARY STATEMENT

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") submits this brief in opposition to the Motion to Dismiss filed by Landscape Specialists, Inc. ("Landscape"), and in support of National Union's cross-motion to (i) compel arbitration and appoint Landscape's arbitrator pursuant to the parties' arbitration agreement, and (ii) enjoin Landscape from further prosecuting its duplicative California action.

The underlying dispute National Union seeks to arbitrate is Landscape's failure to meet its ongoing payment and other obligations to National Union arising out of four years of workers' compensation policies.  In connection with the policies, Landscape and National Union entered into a separate Payment Agreement for Insurance and Risk Management Services, as amended from time to time (the "Payment Agreement"), which governs Landscape's payment and collateral obligations.  Landscape agreed under the policies and the Payment Agreement to reimburse National Union for the first $250,000 paid by National Union on each claim, which represents Landscape's deductible under the Policies. Landscape also agreed to provide collateral sufficient to secure National Union's extension of credit to Landscape.  For years, Landscape has refused to make reimbursement payments or deliver required collateral and now owes National Union over $2 million for amounts paid within the deductible and $842,587 in collateral.

Importantly, under the Payment Agreement, all disputes "must be submitted to arbitration."  National Union served its Demand for Arbitration in accordance with the Payment Agreement.  Landscape did not initially respond to the Demand for Arbitration and then, more than a month after the Demand was served, the parties engaged in settlement discussions but were unable to resolve the dispute.  National Union then insisted that Landscape respond to the Demand for Arbitration by appointing its party-appointed arbitrator, as required by the Payment Agreement.  Landscape refused to do so, but did not file any formal response or objection to

National Union's Demand for Arbitration.  Thus, National Union filed its petition pursuant to 9 U.S.C. § 4 to compel Landscape to arbitrate this dispute pursuant to the arbitration provision contained in the Payment Agreement.  Landscape seeks to avoid arbitration even though it does **not** dispute that (i) it agreed to arbitrate; (ii) the present controversy falls within the scope of its agreement to arbitrate, or (iii) it expressly agreed to litigate in this forum any motion to compel arbitration.  Instead, Landscape seeks to avoid arbitration by arguing that California law bars the enforcement of the arbitration provision.

What Landscape fails to recognize is that it's Motion to Dismiss is barred under New York Civil Practice Law and Rules ("CPLR") § 7503(c) because Landscape failed to raise its objections to arbitration in a timely manner.  CPLR § 7503(c) requires a party to raise any objections to arbitration that it may have in a motion to stay arbitration, and imposes a strict twenty-day statute of limitation for the party to file such motion.  Landscape did not file any motion to stay arbitration within the twenty-day period; as such CPLR 7503(c) precludes Landscape from raising any objections to arbitration at this time.  Accordingly, this court should not consider Landscape's arguments but rather should compel arbitration pursuant to the agreement between the parties.

Should this Court address Landscape's arguments, they are meritless and ought to be rejected.  *First*, Landscape asserts that the arbitration provision cannot be enforced because the Payment Agreement was not filed with the California Department of Insurance in accordance with California law, or attached to the Policies.  Landscape's Motion to Dismiss [Dkt. No. 13] ("Landscape Br."), 8-10.  This attack on the Payment Agreement, however, is foreclosed by the New York Court of Appeals' decision in *Monarch Consulting, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA,* 47 N.E.3d 463 (N.Y. 2016), and the cases in this district following

*Monarch*.  *Monarch* held that any violation of California law requiring the filing of the Payment Agreement does not impact the enforceability of the arbitration clause therein.  This argument, therefore, should be rejected.

*Second*, Landscape contends that arbitration should be denied because National Union allegedly violated California Insurance Code § 11658.5, which requires National Union to disclose to Landscape that any arbitration provision was subject to negotiation.  Landscape Br., 3-5.  This argument does not hold water for several reasons.  As an initial matter, Landscape conveniently ignores that the 2012 Policy was issued *before* the statute became effective and National Union made the required statutory disclosure for the 2014 and 2015 Policies.  Accordingly, Landscape's second argument is inapplicable to three of the four Policies at issue.

Furthermore, Landscape's contention that Section 11658.5 bars the application of the arbitration provision here fails because it is premised on Landscape's erroneous conclusion that Section 11658.5 mandates California as the exclusive jurisdiction in which National Union can seek to compel arbitration.  But the statute says nothing of the sort, and any interpretation of the statute as divesting a New York court of jurisdiction would not stand scrutiny under basic principles of law.  As explained more fully below, this Court has jurisdiction to decide this matter and to compel arbitration.

Finally, pursuant to the agreement between the parties, National Union cross-moves to appoint an arbitrator for Landscape in light of its failure to timely do so, and National Union also requests that this Court enjoin Landscape from prosecuting the duplicative action it filed in California.

## STATEMENT OF FACTS

### A.     The Policies and the Payment Agreement

National Union provided Landscape with a deductible workers' compensation program from February 1, 2012 to February 1, 2016 (the "Insurance Program").  Am. Pet. to Compel Arbitration [Dkt. No. 8] ("Am. Pet.") ¶ 2.  The coverage under the Insurance Program arises out of four policies, with inception dates of February 1, 2012; February 1, 2013; February 1, 2014; and February 1, 2015 (collectively, the "Policies" and each a "Policy").  Pursuant to the Policies, and the Payment Agreement, Landscape is responsible for reimbursing National Union for the first $250,000 paid on each claim (the "Deductible"), although National Union was (and is) responsible for fronting the entirety of the claim in the first instance.  *See id.* at ¶ 15.  National Union bills Landscape monthly for paid losses—the amounts National Union pays in connection with workers' compensation claims (i.e., indemnity payments, medical expenses, and defense costs) up to the $250,000 Deductible.  *Id.*  National Union thus extends credit to Landscape, in that it advances payments up to the Deductible on behalf of Landscape, based on Landscape's promise that it will later reimburse National Union for those amounts.  *Id.*  This type of fronting policy allows commercial companies to manage their cash flow for their insurance expenses by paying the bulk of the costs over time (as claims are adjusted, litigated, settled, and paid) rather than the just during the initial one-year policy period.

To induce National Union to issue the Policies and extend credit to Landscape, Landscape agreed to enter into an additional agreement with National Union—the Payment

Agreement entered into by the parties in early August 2012, as amended from time to time.  *Id.* at Ex. B at 10, 13, 16. [1]

The Payment Agreement sets forth, among other things, certain of Landscape's obligations with respect to paying premiums, assessments and surcharges (collectively, "Premium"), certain of Landscape's obligations with respect to paying loss related amounts and expenses within the Deductible (collectively, "Loss Invoices"), Landscape's obligation to post collateral, the parties' rights and obligations in the event of Landscape's default, and the mechanism for resolving disputes (arbitration).  *See generally id.*  The Payment Agreement generally describes the parties' arrangement as follows: (i) National Union agrees to provide Landscape with insurance coverage according to the underlying Policies, to extend Landscape credit by paying claims in the first instance and seeking reimbursement later, and to invoice Landscape for any additional payment obligations that arise (such as Premium and Loss Invoices); and (ii) Landscape agrees, among other things, to satisfy all it payment obligations to National Union, to pay invoices on time, and to post adequate collateral.  *See id.* at 3.  The key definition of the Payment Agreement is the term "*Your Payment Obligation*," which defines the insured's broad obligation to pay National Union Premium, and to reimburse National Union for Loss Invoices, among other things.  *See id.* at 14.  Landscape expressly agreed "to pay Your Payment Obligation" (referred to herein as the "Payment Obligation").  *See id.* at 3.

The Payment Agreement also requires Landscape to post collateral to secure its promise to pay National Union for the Payment Obligation.  *See id.* at 6-7.  Landscape is initially required to post collateral "in the amount(s) shown in the Schedule" to the Payment Agreement.  *Id.* at 6.

---

[1] Landscape executed two mandatory addenda to the Payment Agreement in February 2013 and June 2014. *Id.* At13, 16.

However, the Payment agreement expressly grants National Union the right to require additional collateral to secure Landscape's Payment Obligation.  *Id.*  National Union may review its "collateral requirement at any time that [National Union] may deem reasonably necessary."  *Id.*  Significantly, the Payment Agreement expressly states that: "If as a result of any review we find that we require additional collateral, You [Landscape] will provide us such additional collateral within 30 days of our written request."  *Id.* (emphasis omitted).  The rationale for these provisions is that National Union should not be taking unsecured credit risk for payments it makes within the Deductible.

Pursuant to the Payment Agreement, Landscape is in default if it fails to make any required payment or satisfy any obligation "within 5 days after its due day," *id.* at 7, with the due date ordinarily being thirty days after a demand for payment is made.  Upon any default, National Union may, among other things, accelerate any unpaid amounts of the Payment Obligation, and require additional collateral.  *See id.* at 15.

## B.  The Payment Agreement's Broad Arbitration Clause

The arbitration provisions in the Payment Agreement are broad and require arbitration of all disputes.  *See id.* at 8-9, 14, 16.  Importantly, the arbitration provision delegates the issue of arbitrability to the arbitrators: "[The arbitrators] will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability."  *Id.* at 9.

The arbitration is to be before a panel of three arbitrators.  *Id.* at 16.  The recipient of an arbitration demand must select its party-appointed arbitrator within 30 days of receiving notice of the arbitration; failure to do so allows the party demanding arbitration to "make application only to a court of competent jurisdiction in the City, County, and State of New York."  *Id.*  Additionally, the Payment Agreement requires "any action or proceeding concerning

arbitrability, including motions to compel or stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York." *Id.*

### C.     Landscape's Defaults

Landscape ceased paying Loss Invoices on a regular basis as of October 2015.  As a result, National Union performed a collateral review in accordance with the Payment Agreement and, on February 17, 2016, demanded additional collateral of $660,942, as well as payment of $293,587 in outstanding Loss Invoices, for a total of $954,529.  *Id.*  Landscape refused to pay *any* of these amounts, including the Loss Invoices in arrears.  Am. Pet. ¶ 22.

National Union performed another security calculation as of September 30, 2016.  At that time, National Union determined that Landscape needed to post an additional $842,587 in collateral, and pay $945,380 in unpaid Loss Invoices, plus $37,826 in Premium, for a total amount of $1,825,793.  *Id.* at ¶ 23.  Landscape refused to pay those amounts as well.  *Id.*  Since then, Landscape has continued to default by failing to pay every monthly Loss Invoice National Union has sent and refusing to post any additional collateral.  *Id* at ¶ 24.

### D.     The Arbitration Demand

On or about May 5, 2017, National Union served Landscape by registered mail with a demand for arbitration (the "Arbitration Demand") and a CPLR 7503(c) notice seeking an award of money damages for, among other things, unpaid Loss Invoices and additional collateral. Declaration of Adam J. Kaiser dated August 5, 2019 ("Kaiser Decl."), Ex. 1.  Pursuant to the Payment Agreement, Landscape was required to select its party-appointed arbitrator and provide National Union of the same within thirty (30) days of the date of service of the Arbitration Demand.  Am. Pet., Ex. B at 16.

Upon receiving the Arbitration Demand, Landscape did not raise—and did not file in court any pleading asserting—any objections to arbitration.  On June 14, 2017—more than 20

days after service of the Arbitration Demand, Landscape asked National Union to stay arbitration pending negotiations between the parties to resolve the dispute. *See* Am. Pet. ¶ 7. The negotiations were not successful, and, on March 20, 2019, National Union demanded that Landscape respond to the Arbitration Demand and appoint its party-appointed arbitrator. *Id.; see also* Kaiser Decl., Ex. 2. Landscape refused to do so, but again failed to file any objections to arbitration—or any other pleading, for that matter—in court. On May 21, 2019—more than two months after demanding that Landscape formally respond to the Arbitration Demand, National Union filed this action to compel arbitration. *See id.*; Pet. to Compel Arbitration [Dkt. No. 6].

### E.    The California Action

On June 20, 2019, after the Amended Petition to Compel Arbitration [Dkt. No. 8] was filed, Landscape filed an action in the Superior Court of California seeking to invalidate the Payment Agreement and litigate the issues arising under the Payment Agreement that National Union already raised in the arbitration demand. Kaiser Decl., Ex. 3. Thereafter, National Union removed the action to the United States District Court for the Central District of California. *Id.* at Ex. 4.

## <u>ARGUMENT</u>

## I.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF FAILED TO COMPLY WITH CPLR §7503(C) AND THUS HAS WAIVED THE RIGHT TO CONTEST ARBITRATION

### A.    CPLR § 7503(c)'s Strict Statute of Limitation Precludes Landscape from Objecting to Arbitration

New York has passed a strict statute of limitation requiring, under the circumstances present here, a party resisting arbitration to seek to stay the arbitration within *twenty days*; failure to do so results in an irrevocable waiver of the right to contest arbitration. Specifically, CPLR § 7503(c) states in pertinent part:

> **Notice of intention to arbitrate**. A party may serve upon another party a demand for arbitration or a notice of intention to arbitrate, specifying the agreement pursuant to which arbitration is sought and the name and address of the party serving the notice, or of an officer or agent thereof if such party is an association or corporation, and stating that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time . . . An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded.

CPLR § 7503(c).

Under the statute, a party (such as National Union here) may serve a statutory "notice of intention to arbitrate" (referred to herein as the "7503(c) Demand").  Upon receipt of a 7503(c) Demand, the other party (such as Landscape here) has 20 days to object to arbitration by filing a motion to stay it; failure to file such an objection "preclude[s]" the receiving party from "objecting that a valid agreement was not made or has not been complied with."   CPLR § 7503(c); *see Morgan v. Nikko Securities Co. International, Inc.*, 691 F. Supp. 792 n.1 (S.D.N.Y. 1988) (Section 7503(c) "has been construed *as a statute of limitations*.") (emphasis added); *Steck v. State Farm Ins. Co.,* 681 N.E.2d 1285, 1286 (N.Y. 1996) ("CPLR 7503(c) requires a party, once served with a demand for arbitration, to move to stay such arbitration within 20 days of service of such demand, *else he or she is precluded from objecting.*") (emphasis added); *Metropolitan Property and Liability Ins. Co. v. Hancock*, 584 N.Y.S.2d 74, 75 (N.Y. App. Div. 1992) ("[F]ailure to move to stay arbitration within this time period is a bar to judicial intrusion into arbitration proceedings"); *see generally* Weinstein, Korn & Miller, *New York Civil Practice* § 7503.32 ("The 20-day statutory time period . . . is to be construed as a strict statute of limitations."); *cf. Kidder, Peabody & Co. v. Collins CMO Fund*, 879 F. Supp. 406, 407 (S.D.N.Y. 1995) (Batts, J.) (denying defendant's motion to stay arbitration because it failed to comply with the procedural requirements of CPLR § 7503(c)").

9

### B.       The CPLR § 7503(c) Statute of Limitation Applies in Federal Court

Under federal law, "resort to state law remains the norm for borrowing of limitations periods" and hence it follows that Section 7503(c)'s limitations provision applies in cases governed by the FAA. *Morgan*, 691 F. Supp. 792, 794 n.1 (citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 171 (1983); *see also Irving R. Brody & Co., Inc. v. Win Holdings International, Inc.*, 213 F. Supp. 2d 378, 382-83 (S.D.N.Y. 2002) (collecting cases). Although the Second Circuit has not yet definitively ruled on whether Section 7503(c) applies in cases arising under the FAA, the court in *Irving R. Brody* noted that the Second Circuit "seem[ed]" to have embraced this rule by affirming a district court decision applying Section 7503(c) to a case governed by the FAA. *Id*. at 382.

As courts have explained, application of Section 7503(c) in federal court is a function of the interplay between state law and the FAA. The FAA—which applies to disputes affecting interstate commerce such as the dispute here—preempts state arbitration laws *only where the FAA conflicts with state law*. *Volt Information Sciences v. Stanford University*, 489 U.S. 468, 477 (1989). Nothing in the FAA conflicts with Section 7503(c), because the FAA contains no provision prescribing a procedure or timeframe for a party to challenge another party's demand for arbitration. *Propulsora Ixtapa Sur, S.A. v. Omni Hotels Franchising Corp.*, 211 A.D.2d 546, 548 (N.Y. App. Div. 1995) ("no conflict exists as the FAA is silent on the issue of a limitations period whereas CPLR 7503(c) . . . provides that a petition must be brought within twenty days, and in such a circumstance, a court applying federal law would utilize the restrictive period") (citing *Morgan*, 691 F. Supp. 792, 794 n.1). Thus, "because the FAA does not address the mechanics of staying an arbitration . . . New York courts borrow CPLR § 7503(c) for limitations purposes." *Consolidated Rail Corp. v. Metropolitan Transportation Authority*, 95 Civ. 2142 (LAP), 1996 U.S. Dist. LEXIS 3519, at *22 n.6 (S.D.N.Y. March 22, 1996) (collecting cases);

*see also Herman Miller, Inc. v. Worth Capital*, 1998 U.S. Dist. LEXIS 5557, *7 (S.D.N.Y. Apr. 20, 1998).

> **C.      Landscape is Precluded from Contesting Arbitration on the Grounds Set Forth in Its Motion**

National Union served Landscape with a 7503(c) Demand on May 5, 2017, *see* Kaiser Decl., Ex. 1, so if Landscape wanted to raise an objection to arbitration, it was incumbent on Landscape to file a motion to stay arbitration within 20 days of receipt of the 7503(c) Demand. *See* CPLR § 7503(c).  Landscape failed to file such a motion within 20 days and, in fact, never filed such a motion.  Landscape is thus now "precluded from objecting to the arbitration." *Infinity Ins. Co. v. Daily Medical Equipment Distribution Center, Inc.*, 964 N.Y.S.2d 401, 404 (N.Y. Sup. Ct. 2013).  As such, it can no longer raise in court any threshold defenses to arbitration.  *Rodriguez v. Allstate Ins. Co.*, 690 N.Y.S.2d 919, 923 (N.Y. Sup. Ct. 1999) ("If the party upon whom the 'Demand' was served does not make an application for a stay within 20 days of service of that 'Demand', the party served would be precluded from thereafter raising the threshold defenses").

By its terms, CPLR § 7503(c) "covers three categories of objections—the validity of the agreement to arbitrate, compliance with the agreement, and whether the arbitration is time-barred.  The statute is strictly construed."  *Pictet Funds Eur. S.A. v. Emerging Managers Grp., L.P.*, No. 14-cv-6854 (SAS), 2014 U.S. Dist. LEXIS 166477, at *16 (S.D.N.Y. Dec. 1, 2014). The first two categories are at issue here.  The first category "involves consideration of the viability or enforceability of the agreement."  *Id*.  Landscape contends that the arbitration agreement is invalid because the Payment Agreement was not attached to the Policies or filed under Section 11658.  Landscape has waived the right to make that argument because it failed to do so within New York's statute of limitations under CPLR § 7503(c).

The second category—compliance with the agreement—is broad and covers any "preliminary requirement or condition precedent to arbitration." *Pictet Funds Eur. S.A. v. Emerging Managers Grp., L.P.,* No. 14-cv-6854 (SAS), 2014 U.S. Dist. LEXIS 166477, at *16 (S.D.N.Y. Dec. 1, 2014). Requirements and conditions can be contractual, but "[t]he condition precedent can also be created by statute" so that "*an untimely objection based on the failure to meet such a statutory condition precedent is precluded*." *Id.* (emphasis added). Indeed, as the Court of Appeals has held, Section 7503(c) addresses any "precondition to access to the arbitral forum," and "in this same category with conditions precedent to arbitration agreed to by the parties *are included statutory conditions precedent.*" *Cty. of Rockland v. Primiano Constr. Co.*, 409 N.E.2d 951, 954 & n.1 (N.Y. 1980) (emphasis added). Under this settled law, Landscape is now precluded from resisting arbitration based on any alleged violation of California insurance law. Indeed, as noted by the court in *Pictet Funds*, Section 7503(c) is routinely applied in the insurance context to require parties to raise, within twenty days, any unmet statutory condition precedent or requirement for arbitration, and the failure to do so results under Section 7503(c) in a waiver of that statutory condition precedent or requirement. *Pictet Funds*, 2014 U.S. Dist. LEXIS 166477, at *16; *see also Allstate Ins. Co. v. Orsini*, 535 N.Y.S.2d 913, 914 (N.Y. Sup. Ct. 1988); *Interboro Mutual Ins. Co. v. Devone*, 735 N.Y.S.2d 363, 366-67 (N.Y. Sup. Ct. 2001); *Rodriguez*, 690 N.Y.S.2d at 923 (collection of cases applying CPLR 7503(c) where the defense to arbitration rested on New York's insurance statutes). As New York courts have held that CPLR § 7503(c) precludes a party from raising defenses to arbitration under New York's *own* insurance laws, there is no principled reason to reach a different result when the party opposing arbitration invokes California's insurance laws.

### D.    New York Law and California Law Do Not Conflict

Application of CPLR § 7503(c) in no way conflicts with, or impairs, the California statutes Landscape invokes. The FAA provides that any party resisting arbitration may assert any "grounds as exist at law or in equity" to challenge the validity or enforceability of an agreement to arbitrate. *See* 9 U.S.C. § 2. California parties, like any parties, routinely challenge arbitration clauses on various state law grounds. The statutes raised here are simply grounds for a California party to challenge an arbitration clause. If Landscape wanted to raise these arguments, however, it was required to do so in accordance with New York's limitation period; it is now too late.

Significantly, as the Court of Appeals has explained, there is no conflict between New York's statutes of limitation and any other state's substantive law because, in New York, statutes of limitation are "generally considered procedural" and "the passing of the applicable period does not wipe out the substantive rights; it merely suspends the remedy." *Tanges v. Heidelberg North America, Inc.*, 93 N.Y.2d 48, 54-55 (1999) (citations omitted). Landscape was required to raise its arguments in accordance with CPLR § 7503(c), and its failure to do so now "suspends the remedy" of either declaring the arbitration clause void or declaring this the improper forum to resolve the case.

## II. THE PAYMENT AGREEMENT REQUIRES ARBITRATION OF THE PARTIES' DISPUTE

Should the Court address the merits of Landscape's untimely arguments, there is no merit to its first argument that National Union's failure to file the Payment Agreement under Section 11658 prevents this dispute from being sent to arbitration. *See* Landscape Br., 8-10. Landscape conveniently ignores that, in *Matter of Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 47 N.E.3d 463, 466 (N.Y. 2016), the Court of Appeals rejected the same

13

argument Landscape makes here, holding that that a violation of Section 11658 did not render the Payment Agreement's arbitration clause unenforceable.

In *Monarch*, National Union, like here, had issued multiple workers' compensation policies to California insureds. *Id.* at 469. The parties also had entered into payment agreements governing the insureds' payment obligations, which contained an arbitration provision substantially the same as the one at issue in the present matter which was not timely filed with the California Workers Compensation Rating Bureau as required under Section 11658.[2]. *Id.* Like Landscape, the insured in *Monarch* argued that the court could not compel arbitration because the Payment Agreement had not been filed in accordance with Section 11658. *Id.* at 470. The court rejected this argument, finding that Section 11658 did not reverse preempt the FAA and that the broad delegation clause in the arbitration provision required the arbitrators, and not the court, to determine the applicability of that statute. *Id.* at 471. It then compelled arbitration. *Id.* at 475. Courts in this district have ruled consistently with *Monarch*, holding that an alleged failure to file the Payment Agreement does not void the duty to arbitrate. *See, e.g., Nat'l Union Fire Ins. Co. v. Pers. Plus, Inc.*, 954 F. Supp. 2d 239, 248 (S.D.N.Y. 2013); *Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc.*, No. 16-cv-5699 (JGK), 2016 U.S. Dist. LEXIS 102703, at *7 (S.D.N.Y. Aug. 4, 2016). Indeed, the court in *Seneca*—the principal case upon which Landmark relies—reached the same result. *See National Union Fire Ins. Co. v.*

---

[2] Specifically, he California Insurance Code requires that all workers' compensation policies (and any ancillary agreements) be filed with the California Workers Compensation Rating Bureau and for ancillary agreements to be attached to the Policies. Cal. Ins. Code § 11658; *see also* Cal. Code Regs. tit. 10, § 2268.

*Seneca Family of Agencies*, 255 F. Supp.3d 480, 488-89 (S.D.N.Y. 2017).  Hence, Landscape's argument cannot stand.[3]

## III.     SECTIONS 11658.5(A)(1) AND 11658.5(C) DO NOT PREVENT THIS COURT FROM COMPELLING ARBITRATION

As set forth above, Landscape has under CPLR § 7503(c) lost the ability to contest any requirement or condition to arbitration.  Should this Court, however, address the merits of Landscape's arguments, it should reject Landscape's arguments based on California Insurance Code §§ 11658.5(a)(1) and 11658.5(c), which went into effect on July 1, 2012.   Section 11658.5(a)(1) provides that:

> An insurer that intends to use a dispute resolution or arbitration agreement to resolve disputes arising in California out of a workers' compensation insurance policy or endorsement issued to a California employer shall disclose to the employer, contemporaneously with any written quote that offers to provide insurance coverage, that choice of law and choice of venue or forum may be a jurisdiction other than California and that these terms are negotiable between the insurer and the employer. The disclosure shall be signed by the employer as evidence of receipt where the employer accepts the offer of coverage from that insurer. . . .

Cal. Ins. Code. § 11658.5(a)(1).  Hence, Section 11658.5(a)(1) requires an insurer to provide notice to an insured that it may negotiate the terms of choice of venue or forum clause, which includes arbitration clauses.

California Insurance Code § 11658.5(c) then sets forth the remedy where the disclosure was not provided:

> Failure by the insurer to observe the requirements of subdivision (a) shall result in a default to California as the choice of law and forum for resolution of disputes arising in California.

---

[3] Although the *Monarch* decision does not directly address the additional attachment requirement under 10 Cal. Code Regs. § 2268 and mentioned by Landscape, Landscape Br. 8-9, the same logic in *Monarch* applies.  The consequence of the alleged failure to attach the Payment Agreement to the Policies is an issue for the arbitrators to decide.

Cal. Ins. Code § 11658.5(c).  Each of these statutes will be addressed to the extent they are applicable for each Policy year.

### A.    The 2012 Policy Pre-Dates Section 11658.5(a)(1), and, Therefore, Is Not Subject to Its Provisions

The 2012 Policy was issued before Section 11658.5(a)(1) became effective.  That statute applies only to workers' compensation policies issued or renewed on or after July 1, 2012.  Cal. Ins. Code § 11658.5(e).  Thus, by its express terms, Section 11658.5(a)(1) does not apply to the 2012 Policy because it was issued on February 1, 2012.  Notably, in *Seneca*, the court compelled arbitration on those policies that pre-dated the enactment of Section 11658.5(a)(1), holding that the statute was not applicable to those policies.  *National Union Fire Ins. Co. v. Seneca Family of Agencies*, 255 F. Supp.3d 480, 488-89 (S.D.N.Y. 2017).  Accordingly, at a minimum, arbitration should be compelled with respect to the 2012 Policy.

### B.    The 2014 and 2015 Policies Comply with Section 11658.5(a)(1) Allowing this Court to Compel Arbitration

While Landscape contends that National Union failed to comply with Section 11658.5(a)(1), the facts are otherwise.  The quotes for coverage and coverage binders for the 2014 and 2015 policies each state:

> Notice Regarding Choice of Law and Choice of Venue or Forum
>
> To the extent that California workers' compensation insurance is a component of your insurance program as outlined herein, please be aware that the corresponding Payment Agreement the insurer intends to use to document certain obligations may provide for a jurisdiction other than California for choice of law and choice of venue or forum.  Prior to effectiveness, the provisions regarding choice of law and choice of venue or forum are negotiable.

Kaiser Decl., Ex. 5 at 18, Ex. 6 at 16, Ex. 7 at 19, Ex. 8 at 17.  Because National Union actually complied with Section 11658.5(a)(1) for the 2014 and 2015 Policies, the statute is irrelevant to those Policies.  Accordingly, arbitration should be compelled with respect to the 2014 and 2015

Policies. This leaves only the 2013 Policy as not being in compliance with Section 11658.5(a)(1).

**C.      A Violation of Section 11658.5(a)(1) Does Not Void an Arbitration Clause**

A violation of Section 11658.5(a)(1) does *not* invalidate the parties' fundamental agreement to arbitrate a dispute. *See Pac. States Indus. v. Am. Zurich Ins. Co.*, No. 18-CV-04064-LHK, 2018 U.S. Dist. LEXIS 198929, at *15 (N.D. Cal. Nov. 21, 2018) ("[T]he penalty for noncompliance with California Insurance Code § 11658.5's disclosure requirements is 'a default to California as the choice of law and forum for resolution of disputes arising in California,' *not a prohibition of arbitration*.") (emphasis added).  Thus, even if National Union violated Section 11658.5(a)(1) with respect to the 2013 Policy (or any of the Policies), that would not void the arbitration clause in the Payment Agreement.  Rather, it merely requires that the parties' arbitration take place in California and be governed by California law.

**D.      Section 11658.5(c) Does Not Require Dismissal of the Petition**

As stated above, under CPLR § 7503(c) the Court should not consider Landscape's argument that Section 11658.5(c) precludes the relief National Union seeks, and even if the Court considers this argument, it only applies to the 2013 Policy, because the 2012 Policy predates the statute and National Union complied with Section 11658.5(a)(1) for the 2014 and 2015 Policies. [4]

In any event, Landscape contends that, under Section 11658.5(c), this Court should dismiss the Petition, forcing National Union to file additional litigation through a motion to

---

[4] However, if the Court concludes that Section 11658.5(a)(1) is nonetheless applicable to the 2012 Policy and/or that National Union did not comply with Section 11658.5(a)(1) for the 2014 and 2015 Policies, the arguments set forth *infra* as to why Landscape's argument is unavailing with respect to the 2013 Policy is equally applicable to the 2012, 2014 and 2015 Policies as well.

compel arbitration in California.  Landscape makes this argument even though, in the Payment Agreement, it agreed to litigate these issues in New York.  In making this argument, Landscape relies exclusively on *Nat'l Union Fire Ins. Co. v. Seneca Family of Agencies*, 255 F. Supp. 3d 480 (S.D.N.Y. 2017).  *See* Landscape Br., 5-8.  There, the court held that Section 11658.5(c) required National Union to file a motion to compel arbitration exclusively in California where, as with the 2013 Policy, National Union failed to provide the disclosure required by Section 11658.5(a)(1).  *Seneca,* 255 F.Supp.3d at 486.

The court did not reach that result based on the language of the statute, nor could it; the statute is silent on the issue of where an insurer may bring a motion to compel arbitration.  *See* Cal. Ins. Code § 11658.5.  Indeed, the court held that "[t]he statute is *unclear* whether noncompliance with § 11658.5 . . . requires only that any arbitration be held in California; or that any litigation relating to the arbitration must be held in California, and, perhaps, that the only 'forum' for a dispute will be a California court rather than an arbitration."  *Seneca,* 255 F.Supp.3d at 485 (emphasis added).  Despite Section 11658.5's vagueness, the court in *Seneca* erroneously held that it required National Union to seek arbitration exclusively in a California court.

In reaching this result, the court acknowledged that Section 4 of the FAA provides that any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition *any United States district court* which . . . would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4 (emphasis added).  Thus, Section 4 of the FAA permitted National Union to file suit in New York to compel arbitration.

Section 4 of the FAA also provides, however, that "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." The court noted that this requirement—that the hearing take place in the district—conflicted with Section 11658.5(c), under which, the court held, the arbitration itself had to take place in California. *Id.* Under the McCarren-Ferguson Act, the court reasoned, the conflict needed to be resolved by giving precedence to state insurance law, thus reverse preempting Section 4 of the FAA. *See id.* at 485-86. The court then denied in part the petition to compel arbitration, ruling that National Union would need to refile a portion of the case in California (specifically, the portion of the motion seeking to compel arbitration on policies violating Section 11658.5(a)(1), which triggers Section 11656.5(c)). *Id.* at 487.

Although the court in *Seneca* reasoned that Section 11658.5(c) reverse preempted Section 4 of the FAA, the *only* aspect of Section 4 of the FAA that conflicts with – and is therefore preempted by – § 11658.5(c) is the provision that the court can only compel arbitration in the district where the petition is filed. There is *nothing* in Section 11658.5(c) that conflicts with – or preempts – Section 4's general mandate that any United States district court may compel arbitration. Hence, the remainder of Section 4 remains effective. Indeed, as a general matter, where preemption applies, the preempting statute (here, Section 11658.5(c)) displaces the preempted statute (here, Section 4 of the FAA) *only to the extent there is a conflict*. Unless the preempted statute is not severable, those portions of the preempted statute that do not conflict with the preempting statute remain and are enforced. *See generally N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 603 F. Supp.2d 715, 734 (S.D.N.Y. 2009); *General Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1460 (2d Cir. 1991). Thus, if the provision of Section 4 of the FAA that "[t]he hearing and proceedings, under such agreement, shall be within the district

in which the petition for an order directing such arbitration is filed" conflicted with Section 11658.5(c), as the court in *Seneca* held, then that provision, and that provision only, of the FAA would be preempted, but the rest of Section 4 of the FAA would remain.

That is, if the court in *Seneca* was correct that, under the McCarran-Ferguson Act, "§ 4 of the FAA must yield to § 11658.5," *Seneca,* 255 F. Supp. 3d at 486, then only the supposed prohibition in Section 4 barring the court from compelling arbitration outside the district would be *preempted* by state law requiring arbitration in California. Section 4 of the FAA, which empowers any United States district court to compel arbitration, remains otherwise intact. And, logically, once the court found that the provision in Section 4 of the FAA limiting its power to compel arbitration in New York was preempted, the court was free under its reverse preemption analysis to enter an order compelling arbitration in California—*just like the preempting California law required*.[5]

In any event, once the *Seneca* court held that Section 4's limitation on compelling arbitration outside the district was preempted and that Section 11658.5(c) would govern, the Court should have simply ordered arbitration in California, just as the court held was required by the preempting statute. After all, the purpose of preemption is to make ineffective the law that is preempted, in favor of the other law with the preemptive effect. Yet, for reasons that are not

---

[5] Moreover, while the court in *Seneca* appears to have held that Section 4 of the FAA is preempted only to the extent Section 4 would require the court to order arbitration in New York, the result would be the same had the court held that the *whole* of Section 4 of the FAA was subject to preemption. If Section 4 has no application at all, then this Court may compel arbitration based on the parties' agreement to arbitrate. This Court has the authority to enforce a valid agreement to arbitrate, just like it can enforce any valid contract, and it can compel arbitration in California just like it can compel performance of any contract in California. The FAA does not create the right to arbitrate; it merely requires that contractual agreements to arbitrate be enforced.

entirely clear, but apparently guided by certain unpublished California decisions holding Section 11658.5(c) makes California the sole and exclusive jurisdiction in which a motion to compel arbitration may in these circumstances be filed, the court nevertheless denied what the preempting California insurance law supposedly required, namely, arbitration in California. That was erroneous, and it is appropriate for this Court to grant National Union's motion and compel arbitration in California consistent with both the non-preempted aspects of Section 4 of the FAA and Section 11658.5(c).

Moreover, the result of the *Seneca* court's decision is that, by dint of a California statute, New York is divested of jurisdiction to compel arbitration under a lawful and valid arbitration agreement entered into by a New York resident, even though the arbitration agreement contains an exclusive New York choice of forum clause. Any interpretation of the California statute to render California courts the exclusive forum to litigate this dispute, however, raises troubling constitutional issues. The Supreme Court has repeatedly ruled that, consistent with the framework of the Constitution and the Full Faith and Credit Clause, one state cannot purport to make its forum the exclusive one to resolve a dispute, especially when that dispute involves a non-resident. *See, e.g., Tenn. Coal, Iron & R.R. Co. v. George*, 233 U.S. 354, 360 (1914) (declaring an Alabama statute unconstitutional where it limited parties to seeking relief in Alabama where a party sued in Georgia; state cannot limit the right to sue "in any court having jurisdiction. That jurisdiction is to be determined by the law of the court's creation and cannot be defeated by the extraterritorial operation of a statute of another State, even though it created the right of action"); *see also Marshall v. Marshall*, 547 U.S. 293, 313-14 (2006) (Texas statute could not reserve to its probate courts the exclusive right to adjudicate a dispute); *Atchison, Topeka & Santa Fe Railway Co. v. Sowers*, 213 U.S. 55, 66-68 (1909).

As the Supreme Court has noted, the "Framers also intended that the States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980). Following this settled law, a state statute purporting to make that state's courts the exclusive forum to resolve disputes is not entitled to full faith and credit and is instead unenforceable. *See, e.g., Collins v. American Automobile Ins. Co. of St. Louis, Missouri*, 230 F.2d 416, 423-24 (2d Cir. 1956) (Louisiana law requiring actions to be brought in certain parishes do not limit a district court in New York from resolving the dispute because, under settled Supreme Court law, there was no "controlling and prohibiting effect to these directions").[6]   Hence, Section 11658.5(c) cannot be interpreted or applied to preclude this Court considering this petition or providing the relief requested by National Union.  S*ee generally Restatement (Second) of Conflict of Laws* § 91 (1971) ("A state may entertain an action even though the state of the applicable law has provided that action on the particular claim shall not be brought outside its territory.").  For this reason, Section 11658.5(c) does not—because it constitutionally cannot—require National Union to forego a New York forum to file suit to compel arbitration.  Rather, it only requires that the arbitration take place in California, and pursuant to California law.  And, to avoid construing the various California laws at issue here as divesting New York of jurisdiction, this Court may reach

---

[6] *See also Brown v. Return Loads Bureau*, 15 F. Supp. 1073, 1074 (S.D.N.Y. 1936) (pursuant to *Tennessee Coal*, state statute requiring suit be brought in its courts not entitled to full faith and credit; court would adjudicate the issue in New York); *A&G Research, Inc. v. GC Metrics, Inc.*, 862 N.Y.S.2d 806 (N.Y. Sup. Ct. 2008) (relying on *Tennessee Coal* and *Marshall*: "It is well established that when a state creates a right, it cannot insist that the right be asserted only in its own courts; if a court elsewhere has jurisdiction and is willing to entertain the claim, it is free to ignore that portion of the creating-state's law which purports to limit jurisdiction and venue to local courts only"); *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 432 (7th Cir. 1993) (Posner, J.); *Ferreri v. Hewitt Associates, LLC*, 908 N.E.2d 1073, 1079 (Ill. App. Ct. 2009); *Toni 1 Tr., by Tangwall v. Wacker*, 413 P.3d 1199, 1203-1206 (Alaska 2018).

the reasonable result that, once Section 4 of the FAA prohibiting the court from compelling jurisdiction in California is preempted by Section 11658.5(c), this Court may compel arbitration in California.

## IV.    THIS COURT SHOULD ENJOIN LANDSCAPE FROM FURTHER PROSECUTING ITS DUPLICATIVE CALIFORNIA ACTION AND APPOINT LANDSCAPE'S PARTY-APPOINTED ARBITRATOR

It is settled law that "a party seeking to enforce a valid agreement to arbitrate in New York under CPLR § 7503 (a) is entitled, as a matter of course, to injunctive relief against further prosecution of proceedings in tribunals of other jurisdictions concerning matters within the scope of the arbitration agreement." *Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales*, 762 N.Y.S.2d 607, 609 (N.Y. App. Div. 2003) (citations omitted) (emphasis added). Indeed, in *Seneca*, the court issued an injunction "enjoining Seneca from proceeding further in the California Action with respect to any claims related to the Pre-July 2012 Policies." *Seneca*, 255 F. Supp.3d at 490. *At a minimum*, an injunction should be issued enjoining Landscape from pursuing its California suit with respect to the 2012, 2014, and 2015 Policies, where the notice statute either does not apply or was not violated. Because the entire dispute—even on the 2013 policy—is subject to arbitration, the injunction should cover the entire California action. Finally, pursuant to Sections 4 and 5 of the FAA, and the terms of the Payment Agreement, this Court should appoint a party-appointed arbitrator for Landscape, as it was required to select one within thirty days of National Union's demand that it do so, and Landscape has ignored that request.

### CONCLUSION

For the foregoing reasons, and the reasons set forth in National Union's Amended Petition, National Union respectfully requests that this Court deny Landscape's motion to dismiss, grant National Union's motion to compel arbitration and appoint Landscape's arbitrator, and enjoin Landscape from further prosecuting its duplicative Californian action.

Dated: New York, New York
      August 5, 2019

ALSTON & BIRD LLP

By: */s/ Adam J. Kaiser*
Adam J. Kaiser
Joanna H. Schorr
Laura E. Paley
90 Park Avenue
New York, New York 10016
Adam.Kaiser@alston.com
Joanna.Schorr@alston.com
Laura.Paley@alston.com
(212) 210-9400
(212) 210-9444 (fax)

*Attorneys for Petitioner National Union*
*Fire Insurance Company of Pittsburgh, Pa.*